IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
SOUTHWESTERN DIVISION

UNITED STATES OF AMERICA

        Plaintiff,

    v.

BLUE TEE CORP.,

        Defendant.

Civil Action No.: 06-5128-CV-SW-DW

**CONSENT DECREE**

# TABLE OF CONTENTS

I.      BACKGROUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    PARTIES BOUND. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

IV.     DEFINITIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

V.      GENERAL PROVISIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 5

VI.     PERFORMANCE OF THE WORK BY SETTLING DEFENDANT. . . . . . . . . . . . . . . . . . . 6

VII.    QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS. . . . . . . . . . . . . . . . . . . 8

VIII.   ACCESS AND INSTITUTIONAL CONTROLS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

IX.     REPORTING REQUIREMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

X.      EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS. . . . . . . . . . . . . . . . . . . . . 13

XI.     PROJECT COORDINATORS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

XII.    PERFORMANCE GUARANTEE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

XIII.   CERTIFICATION OF COMPLETION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

XIV.    EMERGENCY RESPONSE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

XV.     PAYMENTS FOR RESPONSE COSTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

XVI.    INDEMNIFICATION AND INSURANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

XVII.   FORCE MAJEURE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 23

XVIII.  DISPUTE RESOLUTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 24

XIX.    STIPULATED PENALTIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 26

XX.     COVENANTS NOT TO SUE BY PLAINTIFF. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

XXI.    COVENANTS BY SETTLING DEFENDANT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 30

XXII.   EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION. . . . . . . . . . . . . . . . . . . . 31

XXIII.  ACCESS TO INFORMATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 32

XXIV.   RETENTION OF RECORDS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 33

XXV.    NOTICES AND SUBMISSIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 34

XXVI.   EFFECTIVE DATE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

XXVII.  RETENTION OF JURISDICTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

XXVIII. APPENDICES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

XXIX.   COMMUNITY RELATIONS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 35

XXX.    MODIFICATION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XXXI.   LODGING AND OPPORTUNITY FOR PUBLIC COMMENT. . . . . . . . . . . . . . . . . . . . 36

XXXII.  SIGNATORIES/SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 36

XXXIII. FINAL JUDGMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 37

# I. Background

A. The United States of America ("United States"), on behalf of the Administrator of the United States Environmental Protection Agency ("EPA"), filed a complaint in this matter pursuant to Sections 106 and 107 of the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. §§ 9606, 9607.

B. The United States in its complaint seeks, inter alia: (1) reimbursement of costs incurred by EPA and the Department of Justice for response actions at the Granby Subdistrict of the Newton County Mine Tailings Superfund Site, together with accrued interest, and (2) performance of a non-time-critical removal action by the Defendant at the Granby Subdistrict (as defined below) of the Site (as defined below) consistent with the National Contingency Plan, 40 C.F.R. Part 300 (as amended) ("NCP").

C. In accordance with the NCP and Section 121(f)(1)(F) of CERCLA, 42 U.S.C. § 9621(f)(1)(F), EPA notified the State of Missouri (the "State") of negotiations with potentially responsible parties regarding the implementation of the non-time-critical removal action for the Granby Subdistrict of the Site, and EPA has provided the State with an opportunity to comment on the negotiations and the contents of this Consent Decree.

D. In accordance with Section 122(j)(1) of CERCLA, 42 U.S.C. § 9622(j)(1), EPA notified the Department of the Interior of negotiations with potentially responsible parties regarding the release of hazardous substances that may have resulted in injury to the natural resources under Federal trusteeship and encouraged the trustee(s) to participate in the negotiation of this Consent Decree.

E. The Defendant that has entered into this Consent Decree ("Settling Defendant") does not admit any liability to the Plaintiff arising out of the transactions or occurrences alleged in the complaint, nor does it acknowledge that the release or threatened release of hazardous substance(s) at or from the Granby Subdistrict constitutes an imminent or substantial endangerment to the public health or welfare or the environment.

F. Pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, EPA placed the Site on the National Priorities List, set forth at 40 C.F.R. Part 300, Appendix B, by publication in the Federal Register on September 29, 2003, Fed. Reg. 68-FR-55875-55882.

G. In response to a release or a substantial threat of a release of a hazardous substance(s) at or from the Site an Engineering Evaluation/Cost Analysis ("EE/CA") was performed for the Site pursuant to 40 C.F.R. § 300.415.

H. Pursuant to 40 C.F.R. § 415, EPA published notice of the opportunity to comment on the EE/CA and the proposed selection of a non-time-critical response at the Site in August 2003 in a major local newspaper of general circulation. EPA provided an opportunity for written and oral comments from the public on the EE/CA.

I. The decision by EPA on the non-time-critical removal action to be implemented at the Site is embodied in an Action Memorandum to Request a Non-time-critical Removal

Action ("Action Memo"), executed in November 2006. The Action Memo is defined below and attached as Appendix A.

J.      Based on the information presently available to EPA, EPA believes that the Work (as defined below) will be properly and promptly conducted by the Settling Defendant if conducted in accordance with the requirements of this Consent Decree and its appendices.

K.      Solely for the purposes of Section 113(j) of CERCLA, the Non-time-critical Removal Action selected by the Action Memo and the Work to be performed by the Settling Defendant shall constitute a response action taken or ordered by the President.

L.      The Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and implementation of this Consent Decree will expedite the cleanup of the Site and will avoid prolonged and complicated litigation between the Parties, and that this Consent Decree is fair, reasonable, and in the public interest.

NOW, THEREFORE, it is hereby Ordered, Adjudged, and Decreed:

## II. JURISDICTION

1.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1345, and 42 U.S.C. §§ 9606, 9607, and 9613(b). This Court also has personal jurisdiction over the Settling Defendant. Solely for the purposes of this Consent Decree and the underlying complaint, Settling Defendant waives all objections and defenses that it may have to jurisdiction of the Court or to venue in this District. Settling Defendant shall not challenge the terms of this Consent Decree or this Court's jurisdiction to enter and enforce this Consent Decree.

## III. PARTIES BOUND

2.      This Consent Decree applies to and is binding upon the United States and upon Settling Defendant and its successors and assigns. Any change in ownership or corporate status of the Settling Defendant including, but not limited to, any transfer of assets or real or personal property, shall in no way alter Settling Defendant's responsibilities under this Consent Decree.

3.      Settling Defendant shall provide a copy of this Consent Decree to each contractor hired to perform the Work required by this Consent Decree and to each person representing the Settling Defendant with respect to the Granby Subdistrict or the Work and shall condition all contracts entered into hereunder upon performance of the Work in conformity with the terms of this Consent Decree. Settling Defendant or its contractors shall provide written notice of the Consent Decree to all subcontractors hired to perform any portion of the Work required by this Consent Decree. Settling Defendant shall nonetheless be responsible for ensuring that its contractors and subcontractors perform the Work contemplated herein in accordance with this Consent Decree. With regard to the activities undertaken pursuant to this Consent Decree, each contractor and subcontractor shall be deemed to be in a contractual relationship with the Settling Defendant within the meaning of Section 107(b)(3) of CERCLA, 42 U.S.C. § 9607(b)(3).

## IV. DEFINITIONS

4.      Unless otherwise expressly provided herein, terms used in this Consent Decree which are defined in CERCLA or in regulations promulgated under CERCLA shall have the meaning assigned to them in CERCLA or in such regulations.  Whenever terms listed below are used in this Consent Decree or in the appendices attached hereto and incorporated hereunder, the following definitions shall apply:

"Action Memorandum" or "Action Memo" shall mean the EPA Action Memorandum for the Non-time-critical Removal Action to Address Contaminated Wells in the Granby Subdistrict of the Newton County Mine Tailings Site, signed by the Superfund Division Director, Region VII, and all appendices thereto.  Attached hereto as Appendix A.

"CERCLA" shall mean the Comprehensive Environmental Response, Compensation, and Liability Act of 1980, as amended, 42 U.S.C. §§ 9601, *et seq*.

"Consent Decree" shall mean this Decree and all appendices attached hereto (listed in Section XXVIII).  In the event of conflict between this Decree and any appendix, this Decree shall control.

"Day" shall mean a calendar day unless expressly stated to be a working day.  "Working day" shall mean a day other than a Saturday, Sunday, or Federal holiday.  In computing any period of time under this Consent Decree, where the last day would fall on a Saturday, Sunday, or Federal holiday, the period shall run until the close of business of the next working day.

"Effective Date" shall be the effective date of this Consent Decree as provided in Paragraph 95.

"EPA" shall mean the United States Environmental Protection Agency and any successor departments or agencies of the United States.

"Future Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States incurs in reviewing or developing plans, reports and other items pursuant to this Consent Decree, verifying the Work, or otherwise implementing, overseeing, or enforcing this Consent Decree, including, but not limited to, payroll costs, contractor costs, travel costs, laboratory costs, the costs incurred pursuant to Sections X (including, but not limited to, the cost of attorney time and any monies paid to secure access and/or to secure or implement institutional controls including, but not limited to, the amount of just compensation), XIV, and Paragraph 76 of Section XX. Future Response Costs shall also include all Interim Response Costs, and any applicable Interest on those Past Response Costs Settling Defendant has agreed to reimburse under this Consent Decree that has accrued pursuant to 42 U.S.C. § 9607(a) during the period from October 15, 2006 through the Effective Date of this Consent Decree.

"Granby Subdistrict" or  "Subdistrict" shall mean the Granby Subdistrict of the Newton County Mine Tailings Site as approximately designated on the map attached as Appendix B, and encompasses all areas where pollutants, contaminants and/or hazardous substances released from the area designated as the Granby Subdistrict on Attachment B have come to be located.

"Interest," shall mean interest at the rate specified for interest on investments of the EPA Hazardous Substance Superfund established by 26 U.S.C. § 9507, compounded annually on

October 1 of each year, in accordance with 42 U.S.C. § 9607(a). The applicable rate of interest shall be the rate in effect at the time the interest accrues. The rate of interest is subject to change on October 1 of each year.

"Interim Response Costs" shall mean all costs, including direct and indirect costs, (a) paid by the United States in connection with the Granby Subdistrict between October 15, 2006 and the Effective Date, or (b) incurred prior to the Effective Date but paid after that date.

"MDNR" shall mean the Missouri Department of Natural Resources and any successor departments or agencies of the State.

"Newton County Mine Tailings Superfund Site" or "Site" shall mean the site, located in Newton County, Missouri, listed on the National Priorities List on September 29, 2003, that consists of six subdistricts, including the Granby Subdistrict as defined in this Consent Decree.

"Newton County Mine Tailings Superfund Site Special Account" shall mean the special account established at the Site by EPA pursuant to Section 122(b)(3) of CERCLA, 42 U.S.C. §9622(b)(3).

"National Contingency Plan" or "NCP" shall mean the National Oil and Hazardous Substances Pollution Contingency Plan promulgated pursuant to Section 105 of CERCLA, 42 U.S.C. § 9605, codified at 40 C.F.R. Part 300, and any amendments thereto.

"Paragraph" shall mean a portion of this Consent Decree identified by an arabic numeral or an upper case letter.

"Parties" shall mean the United States and the Settling Defendant.

"Past Response Costs" shall mean all costs, including, but not limited to, direct and indirect costs, that the United States paid at or in connection with the Granby Subdistrict of the Site through October 14, 2006, plus any applicable Interest on all such costs which have accrued pursuant to 42 U.S.C. § 9607(a) through such date.

"Performance Standards" shall mean the clean up standards and other measures of achievement of the actions selected by EPA, set forth in Section VI.A.3 of the Action Memo and Section 2.1 of the SOW.

"Plaintiff" shall mean the United States.

"RCRA" shall mean the Solid Waste Disposal Act, as amended, 42 U.S.C. §§ 6901 *et seq*. (also known as the Resource Conservation and Recovery Act).

"Removal Action" or "Non-time-critical Removal Action" or "RA" shall mean those activities to be undertaken by the Settling Defendant to implement the Action Memo, in accordance with the SOW and Removal Action Work Plans and other plans approved by EPA.

"Removal Action Work Plan" or "RAWP" shall mean the document developed pursuant to Paragraph 10 of this Consent Decree and approved by EPA, and any amendments thereto.

"Section" shall mean a portion of this Consent Decree identified by a Roman numeral.

"Settling Defendant" shall mean the Blue Tee Corp.

"State" shall mean the State of Missouri.

4

"Statement of Work" or "SOW" shall mean the statement of work for implementation of the Removal Action at the Granby Subdistrict, as set forth in Appendix C to this Consent Decree and any modifications made in accordance with this Consent Decree.

"Supervising Contractor" shall mean the principal contractor retained by the Settling Defendant to supervise and direct the implementation of the Work under this Consent Decree.

"United States" shall mean the United States of America.

"Waste Material" shall mean (1) any "hazardous substance" under Section 101(14) of CERCLA, 42 U.S.C. § 9601(14); (2) any pollutant or contaminant under Section 101(33), 42 U.S.C. § 9601(33); (3) any "solid waste" under Section 1004(27) of RCRA, 42 U.S.C. § 6903(27).

"Work" shall mean all activities Settling Defendant is required to perform under this Consent Decree, except those required by Section XXIV (Retention of Records).

## V. General Provisions

5.     Objectives of the Parties. The objectives of the Parties in entering into this Consent Decree are to protect public health or welfare or the environment at the Granby Subdistrict by the implementation of response actions at the Granby Subdistrict by the Settling Defendant, to reimburse response costs of the Plaintiff, and to resolve the claims of Plaintiff against Settling Defendant as provided in this Consent Decree.

6.     Commitments by Settling Defendant. Settling Defendant shall finance and perform the Work in accordance with this Consent Decree, the Action Memo, the SOW, and all work plans and other plans, standards, specifications, and schedules set forth herein or developed by Settling Defendant and approved by EPA pursuant to this Consent Decree. Settling Defendant shall also reimburse the United States for Past Response Costs and Future Response Costs as provided in this Consent Decree.

7.     Compliance With Applicable Law. All activities undertaken by Settling Defendant pursuant to this Consent Decree shall be performed in accordance with the requirements of all applicable federal and state laws and regulations. Settling Defendant must also comply with all applicable or relevant and appropriate requirements of all Federal and state environmental laws as set forth in the Action Memo and the SOW. The activities conducted pursuant to this Consent Decree, if approved by EPA, shall be considered to be consistent with the NCP.

8.     Permits

    a.     As provided in Section 121(e) of CERCLA and Section 300.400(e) of the NCP, no permit shall be required for any portion of the Work conducted entirely on-site (i.e., within the areal extent of contamination or in very close proximity to the contamination and necessary for implementation of the Work). Where any portion of the Work that is not on-site requires a federal or state permit or approval, Settling Defendant shall submit timely and complete applications and take all other actions necessary to obtain all such permits or approvals.

b.     The Settling Defendant may seek relief under the provisions of Section XVII (Force Majeure) of this Consent Decree for any delay in the performance of the Work resulting from a failure to obtain, or a delay in obtaining, any permit required for the Work.

c.     This Consent Decree is not, and shall not be construed to be, a permit issued pursuant to any federal or state statute or regulation.

## VI.   PERFORMANCE OF THE WORK BY SETTLING DEFENDANT

9.     <u>Selection of Supervising Contractor</u>.

a.     All aspects of the Work to be performed by Settling Defendant pursuant to Sections VI (Performance of the Work by Settling Defendant), VII (Quality Assurance, Sampling and Data Analysis), and XIV (Emergency Response) of this Consent Decree shall be under the direction and supervision of the Supervising Contractor, the selection of which shall be subject to disapproval by EPA after a reasonable opportunity for review and comment by the State.  No later than 10 days after the lodging of this Consent Decree, Settling Defendant shall notify EPA in writing of the name, title, and qualifications of any contractor proposed to be the Supervising Contractor.  With respect to any contractor proposed to be Supervising Contractor, Settling Defendant shall demonstrate that the proposed contractor has a quality system that complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), by submitting a copy of the proposed contractor's Quality Management Plan (QMP).  The QMP should be prepared in accordance with "EPA Requirements for Quality Management Plans (QA/R-2)" (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA.  EPA will issue a notice of disapproval or an authorization to proceed.  If at any time thereafter, Settling Defendant proposes to change a Supervising Contractor, Settling Defendant shall give such notice to EPA and must obtain an authorization to proceed from EPA, after a reasonable opportunity for review and comment by the State, before the new Supervising Contractor performs, directs, or supervises any Work under this Consent Decree.

b.     If EPA disapproves a proposed Supervising Contractor, EPA will notify Settling Defendant in writing.  Settling Defendant shall submit to EPA a list of contractors, including the qualifications of each contractor, that would be acceptable to them within 30 days of receipt of EPA's disapproval of the Supervising Contractor previously proposed.  The EPA will provide written notice of the names of any contractor(s) that it disapproves and an authorization to proceed with respect to any of the other contractors.  Settling Defendant may select as its Supervising Contractor any contractor from that list that is not disapproved and shall notify EPA of the name of the contractor selected within 21 days of EPA's authorization to proceed.

c.     If EPA fails to provide written notice of its authorization to proceed or disapproval as provided in this Paragraph and this failure prevents the Settling Defendant from meeting one or more deadlines in a plan approved by the EPA pursuant to this Consent Decree, Settling Defendant may seek relief under the provisions of Section XVII (Force Majeure) hereof.

10. <u>Removal Action</u>.

a.　No later than 45 days after EPA's issuance of an authorization to proceed pursuant to Paragraph 9, Settling Defendant shall submit to EPA a work plan for the performance of the Removal Action at the Site ("Removal Action Work Plan" or "Work Plan"). The Removal Action Work Plan shall provide for construction and implementation of the action set forth in the Action Memo and achievement of the Performance Standards, in accordance with this Consent Decree, the EE/CA, the SOW, and the plans and specifications approved by EPA. Upon its approval by EPA, the Removal Action Work Plan shall be incorporated into and

become enforceable under this Consent Decree. At the same time as Settling Defendant submits the Removal Action Work Plan, Settling Defendant shall submit to EPA a Health and Safety Plan for field activities required by the Removal Action Work Plan which conforms to the applicable Occupational Safety and Health Administration and EPA requirements including, but not limited to, 29 C.F.R. § 1910.120.

b.　The Removal Action Work Plan shall include the following: (1) schedule for completion of the Removal Action; (2) update and confirmation of the identification of all residences where deep-aquifer wells will be installed; (3) update and confirmation of the identification of all residential water-supply wells in the shallow aquifer within or downgradient of the Granby Subdistrict subject to monitoring; (4) method for selection of the contractor; (5) methods for satisfying permitting requirements; (6) methods for implementation of the monitoring; (7) methods for installation of future wells needed to respond to any migrating contamination; (8) tentative formulation of the Removal Action team; and (9) a construction quality control plan including the methods for implementation of the Removal Action Work Plan.

c.　Upon approval of the Removal Action Work Plan by EPA, after a reasonable opportunity for review and comment by the State, and submittal of the Health and Safety Plan for all field activities to EPA, Settling Defendant shall implement the activities required under the Removal Action Work Plan. The Settling Defendant shall submit to EPA and the State all plans, submittals, or other deliverables required under the approved Removal Action Work Plan in accordance with the approved schedule for review and approval pursuant to Section X (EPA Approval of Plans and Other Submissions). Unless otherwise directed by EPA, Settling Defendant shall not commence physical Removal Action activities at the Granby Subdistrict prior to approval of the Removal Action Work Plan.

11.　The Settling Defendant shall continue to implement the Removal Action until the Performance Standards are achieved and until a Record of Decision is issued by EPA selecting a remedial action within the Granby Subdistrict or Site, and for so long thereafter as is otherwise required under this Consent Decree.

12.　<u>Modification of the SOW or Related Work Plans</u>.

a.　If EPA determines that modification to the work specified in the SOW and/or in work plans developed pursuant to the SOW is necessary to achieve and maintain the Performance Standards or to carry out and maintain the effectiveness of the action set forth in the Action Memo, EPA may require that such modification be incorporated in the SOW and/or such work plans, provided, however, that a modification may only be required pursuant to this

7

Paragraph to the extent that it is consistent with the scope of the action selected in the Action Memo.

b. For the purposes of this Paragraph 12 and Paragraph 43 only, the "scope of the action selected in the Action Memo" is all activities necessary to implement an alternative water supply for residences impacted by lead, cadmium, and/or zinc contamination in residential water supply wells within the Granby Subdistrict of the Site. The scope of the action includes areas outside the Granby Subdistrict where contaminants from the Granby Subdistrict have come to be located.

c. If Settling Defendant objects to any modification determined by EPA to be necessary pursuant to this Paragraph, it may seek dispute resolution pursuant to Section XVIII (Dispute Resolution). The SOW and/or related work plans shall be modified in accordance with final resolution of the dispute.

d. After final resolution of any dispute pursuant to Subparagraph c above, Settling Defendant shall implement any work required by any modifications incorporated in the SOW and/or in work plans developed pursuant to the SOW in accordance with this Paragraph.

e. Nothing in this Paragraph shall be construed to limit EPA's authority to require performance of further response actions as otherwise provided in this Consent Decree.

13. Settling Defendant acknowledges and agrees that nothing in this Consent Decree, the SOW, or the Removal Action Work Plan constitutes a warranty or representation of any kind by Plaintiff that compliance with the work requirements set forth in the SOW and the Work Plans will achieve the Performance Standards.

14. a. Settling Defendant shall, prior to any off-Site shipment of Waste Material from the Site to an out-of-state waste management facility, provide written notification to the appropriate state environmental official in the receiving facility's state and to the EPA Project Coordinator of such shipment of Waste Material. However, this notification requirement shall not apply to any off-Site shipments when the total volume of all such shipments will not exceed 10 cubic yards.

(1) The Settling Defendant shall include in the written notification the following information, where available: (1) the name and location of the facility to which the Waste Material is to be shipped; (2) the type and quantity of the Waste Material to be shipped; (3) the expected schedule for the shipment of the Waste Material; and (4) the method of transportation. The Settling Defendant shall notify the state in which the planned receiving facility is located of major changes in the shipment plan, such as a decision to ship the Waste Material to another facility within the same state, or to a facility in another state.

(2) The identity of the receiving facility and state will be determined by the Settling Defendant following the award of the contract for Removal Action construction. The Settling Defendant shall provide the information required by Paragraph 14.a as soon as practicable after the award of the contract and before the Waste Material is actually shipped.

b. Before shipping any hazardous substances, pollutants, or contaminants from the Site to an off-site location, Settling Defendant shall obtain EPA's certification that the proposed receiving facility is operating in compliance with the requirements of CERCLA Section 121(d)(3) and 40 C.F.R. 300.440. Settling Defendant shall only send hazardous substances,

8

pollutants, or contaminants from the Site to an off-site facility that complies with the requirements of the statutory provision and regulations cited in the preceding sentence.

## VII. QUALITY ASSURANCE, SAMPLING, AND DATA ANALYSIS

15.     Settling Defendant shall use quality assurance, quality control, and chain of custody procedures for all samples in accordance with "EPA Requirements for Quality Assurance Project Plans (QA/R5)" (EPA/240/B-01/003, March 2001) "Guidance for Quality Assurance Project Plans (QA/G-5)" (EPA/600/R-98/018, February 1998), and subsequent amendments to such guidelines upon notification by EPA to Settling Defendant of such amendment. Amended guidelines shall apply only to procedures conducted after such notification. Prior to the commencement of any sampling or monitoring project under the Consent Decree, Settling Defendant shall submit to EPA for approval, after a reasonable opportunity for review and comment by the State, a Quality Assurance Project Plan ("QAPP") that is consistent with the SOW, the NCP and applicable guidance documents. If relevant to the proceeding, the Parties agree that validated sampling data generated in accordance with the QAPP(s) and reviewed and approved by EPA shall be admissible as evidence, without objection, in any proceeding under this Decree. Settling Defendant shall ensure that EPA personnel and its authorized representatives are allowed access at reasonable times to all laboratories utilized by Settling Defendant in implementing this Consent Decree. In addition, Settling Defendant shall ensure that such laboratories shall analyze all samples submitted by EPA pursuant to the QAPP for quality assurance monitoring. Settling Defendant shall ensure that the laboratories it utilizes for the analysis of samples taken pursuant to this Consent Decree perform all analyses according to accepted EPA methods. Accepted EPA methods consist of those methods which are documented in the "Contract Lab Program Statement of Work for Inorganic Analysis" and the "Contract Lab Program Statement of Work for Organic Analysis," dated February 1988, and any amendments made thereto during the course of the implementation of this Consent Decree; however, upon approval by EPA, after opportunity for review and comment by the State, the Settling Defendant may use other analytical methods which are as stringent as or more stringent than the CLP- approved methods. Settling Defendant shall ensure that all laboratories it uses for analysis of samples taken pursuant to this Consent Decree participate in an EPA or EPA-equivalent QA/QC program. Settling Defendant shall only use laboratories that have a documented Quality System which complies with ANSI/ASQC E4-1994, "Specifications and Guidelines for Quality Systems for Environmental Data Collection and Environmental Technology Programs," (American National Standard, January 5, 1995), and "EPA Requirements for Quality Management Plans (QA/R-2)," (EPA/240/B-01/002, March 2001) or equivalent documentation as determined by EPA. EPA may consider laboratories accredited under the National Environmental Laboratory Accreditation Program (NELAP) as meeting the Quality System requirements. Settling Defendant shall ensure that all field methodologies utilized in collecting samples for subsequent analysis pursuant to this Consent Decree will be conducted in accordance with the procedures set forth in the QAPP approved by EPA.

16.     Upon request, the Settling Defendant shall allow split or duplicate samples to be taken by EPA and the State or their authorized representatives. Settling Defendant shall notify EPA and the State not less than 28 days in advance of any sample collection activity unless shorter notice is agreed to by EPA. In addition, EPA and the State shall have the right to take any additional samples that EPA or the State deem necessary. Upon request, EPA shall allow the

Settling Defendant to take split or duplicate samples of any samples it takes as part of the Plaintiff's oversight of the Settling Defendant's implementation of the Work.

17.     Settling Defendant shall submit to EPA and the State 2 copies of the results of all sampling and/or tests or other data obtained or generated by or on behalf of Settling Defendant with respect to the Site and/or the implementation of this Consent Decree unless EPA agrees otherwise.

18.     Notwithstanding any provision of this Consent Decree, the United States hereby retains all of its information gathering and inspection authorities and rights, including enforcement actions related thereto, under CERCLA, RCRA and any other applicable statutes or regulations.

## VIII.  ACCESS AND INSTITUTIONAL CONTROLS

19.     If the Site, or any other property where access and/or land/water use restrictions are needed to implement this Consent Decree, is owned or controlled by persons other than the Settling Defendant, Settling Defendant shall use best efforts to secure from such persons:

a.     an agreement to provide access thereto for Settling Defendant, as well as for the United States on behalf of EPA, and the State, as well as their representatives (including contractors), for the purpose of conducting any activity related to this Consent Decree including, but not limited to the following activities:

(1)     Monitoring the Work;

(2)     Verifying any data or information submitted to the United States ;

(3)     Conducting investigations relating to contamination at or near the Site;

(4)     Obtaining samples;

(5)     Assessing the need for, planning, or implementing additional response actions at or near the Site;

(6)     Assessing implementation of quality assurance and quality control practices as defined in the approved Construction Quality Assurance Plans and, if applicable, an approved Quality Assurance Project Plans;

(7)     Implementing the Work pursuant to the conditions set forth in Paragraph 76 of this Consent Decree;

(8)     Inspecting and copying records, operating logs, contracts, or other documents maintained or generated by Settling Defendant or its agents, consistent with Section XXIII (Access to Information);

(9)     Assessing Settling Defendant's compliance with this Consent Decree; and

(10)   Determining whether the Site or other property is being used in a manner that is prohibited or restricted, or that may need to be prohibited or restricted, by or pursuant to this Consent Decree;

b.      an agreement, enforceable by the Settling Defendant and the United States, to refrain from using the Site, or such other property, in any manner that would interfere with or adversely affect the implementation, integrity, or protectiveness of the Removal Action to be performed pursuant to this Consent Decree.  Such restrictions include, but are not limited to, subsurface soil disturbance that could compromise the integrity of waters-supply lines.

c.      If EPA so requests, the execution and recordation in the Recorder's Office or Registry of Deeds or other appropriate land records office of Newton County, State of Missouri, of an easement, running with the land, that (i) grants a right of access for the purpose of conducting any activity related to this Consent Decree including, but not limited to, those activities listed in Paragraph 19.a of this Consent Decree and (ii) grants restrictions that EPA determines are necessary to implement, ensure non-interference with, or ensure the protectiveness of the removal measures to be performed pursuant to this Consent Decree.  The access rights and/or rights to enforce use restrictions shall be granted to (i) the United States, on behalf of EPA, and its representatives, (ii) the State and its representatives, (iii) the Settling Defendant and its representatives, and/or (iv) other appropriate grantees. If EPA so requests, the Settling Defendant shall submit within 45 days of such request to EPA for review and approval with respect to such property:

(1)      a draft easement that is enforceable under the laws of the State of Missouri, and

(2)      a current title insurance commitment, or some other evidence of title acceptable to EPA, which shows title to the land described in the easement to be free and clear of all prior liens and encumbrances (except when those liens or encumbrances are approved by EPA or when, despite best efforts, Settling Defendant is unable to obtain release or subordination of such prior liens or encumbrances)

Within 15 days of EPA's approval and acceptance of the easement and the title evidence, Settling Defendant shall update the title search and, if it is determined that nothing has occurred since the effective date of the commitment to affect the title adversely, the easement shall be recorded with the Recorder's Office or Registry of Deeds or other appropriate office of Newton County.  Within 30 days of the recording of the easement, Settling Defendant shall provide EPA with a final title insurance policy, or other final evidence of title acceptable to EPA, and a certified copy of the original recorded easement showing the clerk's recording stamps.  If easement is to be conveyed to the United States, the easement and title evidence (including final title evidence) shall be prepared in accordance with the U.S. Department of Justice Title Standards 2001, and approval of the sufficiency of title must be obtained as required by 40 U.S.C. § 255.

20.      For purposes of Paragraph 19 of this Consent Decree, "best efforts" includes the payment of reasonable sums of money in consideration of access, access easements, land/water use restrictions, restrictive easements, and/or an agreement to release or subordinate a prior lien or encumbrance.  If (a) any access or land/water use restriction agreements required by Paragraphs 19.a or 19.b of this Consent Decree are not obtained within 45 days of EPA's request, (b) or any access easements or restrictive easements required by Paragraph 19.c of this

Consent Decree are not submitted to EPA in draft form within 45 days of the date of EPA's request or (c) Settling Defendant is unable to obtain an agreement pursuant to Paragraph 19 from the holder of a prior lien or encumbrance to release or subordinate such lien or encumbrance to the easement being created pursuant to this Consent Decree within 45 days of the date of entry of this Consent Decree, Settling Defendant shall promptly notify the United States in writing, and shall include in that notification a summary of the steps that Settling Defendant has taken to attempt to comply with Paragraph 19 of this Consent Decree. The United States may, as it deems appropriate, assist Settling Defendant in obtaining access or land/water use restrictions, either in the form of contractual agreements or in the form of easements running with the land, or in obtaining the release or subordination of a prior lien or encumbrance. Settling Defendant shall reimburse the United States in accordance with the procedures in Section XV (Payments for Response Costs), for all costs incurred, direct or indirect, by the United States in obtaining such access, land/water use restrictions, and/or the release/subordination of prior liens or encumbrances including, but not limited to, the cost of attorney time and the amount of monetary consideration paid or just compensation.

21.     If EPA determines that land/water use restrictions in the form of state or local laws, regulations, ordinances or other governmental controls are needed to implement the action selected in the Action Memo, ensure the integrity and protectiveness thereof, or ensure non-interference therewith, Settling Defendant shall cooperate with EPA's efforts to secure such governmental controls.

22.     Notwithstanding any provision of this Consent Decree, the United States retains all of its access authorities and rights, as well as all of its rights to require land/water use restrictions, including enforcement authorities related thereto, under CERCLA, RCRA and any other applicable statute or regulations.

IX.  REPORTING REQUIREMENTS

23.     In addition to any other requirement of this Consent Decree, Settling Defendant shall submit to EPA and the State two (2) copies of written monthly progress reports that: (a) describe the actions which have been taken toward achieving compliance with this Consent Decree during the previous month; (b) include a summary of all results of sampling and tests and all other data received or generated by Settling Defendant or its contractors or agents in the previous month; (c) identify all work plans, plans and other deliverables required by this Consent Decree completed and submitted during the previous month; (d) describe all actions, including, but not limited to, data collection and implementation of work plans, which are scheduled for the next month and provide other information relating to the progress of construction, including, but not limited to, critical path diagrams, Gantt charts and Pert charts; (e) include information regarding percentage of completion, unresolved delays encountered or anticipated that may affect the future schedule for implementation of the Work, and a description of efforts made to mitigate those delays or anticipated delays; (f) include any modifications to the work plans or other schedules that Settling Defendant has proposed to EPA or that have been approved by EPA; and (g) describe all activities undertaken in support of the Community Relations Plan during the previous month and those to be undertaken in the next month. Settling Defendant shall submit these progress reports to EPA and the State by the tenth day of every month following the lodging of this Consent Decree until EPA notifies the Settling Defendant pursuant to

Paragraph 43.b of Section XIII (Certification of Completion). If requested by EPA, Settling Defendant shall also provide briefings for EPA to discuss the progress of the Work.

24. The Settling Defendant shall notify EPA of any change in the schedule described in the monthly progress report for the performance of any activity, including, but not limited to, data collection and implementation of work plans, no later than seven days prior to the performance of the activity.

25. Upon the occurrence of any event during performance of the Work that Settling Defendant is required to report pursuant to Section 103 of CERCLA or Section 304 of the Emergency Planning and Community Right-to-know Act (EPCRA), Settling Defendant shall within 24 hours of the onset of such event orally notify the EPA Project Coordinator or the Alternate EPA Project Coordinator (in the event of the unavailability of the EPA Project Coordinator), or, in the event that neither the EPA Project Coordinator or Alternate EPA Project Coordinator is available, the Emergency Response Section, Region VII, United States Environmental Protection Agency. These reporting requirements are in addition to the reporting required by CERCLA Section 103 or EPCRA Section 304.

26. Within 20 days of the onset of such an event, Settling Defendant shall furnish to Plaintiff a written report, signed by the Settling Defendant's Project Coordinator, setting forth the events which occurred and the measures taken, and to be taken, in response thereto. Within thirty (30) days of the conclusion of such an event, Settling Defendant shall submit a report setting forth all actions taken in response thereto.

27. Settling Defendant shall submit two (2) copies of all plans, reports, and data required by the SOW, the Removal Action Work Plan, or any other approved plans to EPA in accordance with the schedules set forth in such plans. Settling Defendant shall simultaneously submit two (2) copies of all such plans, reports and data to the State. Upon request by EPA Settling Defendant shall submit in electronic form all portions of any report or other deliverable Settling Defendant is required to submit pursuant to the provisions of this Consent Decree.

28. All reports and other documents submitted by Settling Defendant to EPA (other than the monthly progress reports referred to above) which purport to document Settling Defendant's compliance with the terms of this Consent Decree shall be signed by an authorized representative of the Settling Defendant.

X. EPA APPROVAL OF PLANS AND OTHER SUBMISSIONS

29. After review of any plan, report or other item which is required to be submitted for approval pursuant to this Consent Decree, EPA, after reasonable opportunity for review and comment by the State, shall: (a) approve, in whole or in part, the submission; (b) approve the submission upon specified conditions; (c) modify the submission to cure the deficiencies; (d) disapprove, in whole or in part, the submission, directing that the Settling Defendant modify the submission; or (e) any combination of the above. However, EPA shall not modify a submission without first providing Settling Defendant at least one notice of deficiency and an opportunity to cure within thirty (30) days, except where to do so would cause serious disruption to the Work or where previous submission(s) have been disapproved due to material defects and the deficiencies in the submission under consideration indicate a bad faith lack of effort to submit an acceptable deliverable.

30.     In the event of approval, approval upon conditions, or modification by EPA, pursuant to Paragraph 29(a), (b), or (c), Settling Defendant shall proceed to take any action required by the plan, report, or other item, as approved or modified by EPA subject only to its right to invoke the Dispute Resolution procedures set forth in Section XVIII (Dispute Resolution) with respect to the modifications or conditions made by EPA.  In the event that EPA modifies the submission to cure the deficiencies pursuant to Paragraph 29(c) and the submission has a material defect, EPA retains its right to seek stipulated penalties, as provided in Section XXI (Stipulated Penalties).

31.     Resubmission of Plans.

        a.     Upon receipt of a notice of disapproval pursuant to Paragraph 29(d), Settling Defendant shall, within thirty (30) days or such longer time as specified by EPA in such notice, correct the deficiencies and resubmit the plan, report, or other item for approval.  Any stipulated penalties applicable to the submission, as provided in Section XIX, shall accrue during the thirty-day period or otherwise specified period but shall not be payable unless the resubmission is disapproved or modified due to a material defect as provided in Paragraphs 32 and 33.

        b.     Notwithstanding the receipt of a notice of disapproval pursuant to Paragraph 29(d), Settling Defendant shall proceed, at the direction of EPA, to take any action required by any non-deficient portion of the submission.  Implementation of any non-deficient portion of a submission shall not relieve Settling Defendant of any liability for stipulated penalties under Section XIX (Stipulated Penalties).

32.     In the event that a resubmitted plan, report or other item, or portion thereof, is disapproved by EPA, EPA may again require the Settling Defendant to correct the deficiencies, in accordance with the preceding Paragraphs.  EPA also retains the right to modify or develop the plan, report or other item. Settling Defendant shall implement any such plan, report, or item as modified or developed by EPA, subject only to its right to invoke the procedures set forth in Section XVIII (Dispute Resolution).

33.     If upon resubmission, a plan, report, or item is disapproved or modified by EPA due to a material defect, Settling Defendant shall be deemed to have failed to submit such plan, report, or item timely and adequately unless the Settling Defendant invokes the dispute resolution procedures set forth in Section XVIII (Dispute Resolution) and EPA's action is overturned pursuant to that Section.  The provisions of Section XVIII (Dispute Resolution) and Section XIX (Stipulated Penalties) shall govern the implementation of the Work and accrual and payment of any stipulated penalties during Dispute Resolution.  If EPA's disapproval or modification is upheld, stipulated penalties shall accrue for such violation from the date on which the initial submission was originally required, as provided in Section XIX.

34.     All plans, reports, and other items required to be submitted to EPA under this Consent Decree shall, upon approval or modification by EPA, be enforceable under this Consent Decree.  In the event EPA approves or modifies a portion of a plan, report, or other item required to be submitted to EPA under this Consent Decree, the approved or modified portion shall be enforceable under this Consent Decree.

## XI. Project Coordinators

35.     No later than 20 days after lodging of this Consent Decree, Settling Defendant and EPA will notify each other, in writing, of the name, address and telephone number of their respective designated Project Coordinators and Alternate Project Coordinators. If a Project Coordinator or Alternate Project Coordinator initially designated is changed, the identity of the successor will be given to the other Parties at least 5 working days before the changes occur, unless impracticable, but in no event later than the actual day the change is made. The Settling Defendant's Project Coordinator shall be subject to disapproval by EPA and shall have the technical expertise sufficient to adequately oversee all aspects of the Work. The Settling Defendant's Project Coordinator shall not be an attorney for the Settling Defendant in this matter. He or she may assign other representatives, including other contractors, to serve as a Site representative for oversight of performance of daily operations during removal activities.

36.     Plaintiff may designate other representatives, including, but not limited to, EPA employees, and federal contractors and consultants, to observe and monitor the progress of any activity undertaken pursuant to this Consent Decree. EPA's Project Coordinator and Alternate Project Coordinator shall have the authority lawfully vested in a Remedial Project Manager (RPM) and an On-Scene Coordinator (OSC) by the National Contingency Plan, 40 C.F.R. Part 300. In addition, EPA's Project Coordinator or Alternate Project Coordinator shall have authority, consistent with the National Contingency Plan, to halt any Work required by this Consent Decree and to take any necessary response action when she or he determines that conditions at the Site constitute an emergency situation or may present an immediate threat to public health or welfare or the environment due to release or threatened release of Waste Material.

37.     EPA's Project Coordinator and the Settling Defendant's Project Coordinator will meet on an as needed basis.

## XII. Performance Guarantee

38.1.   In order to ensure the full and final completion of the Work, Settling Defendant shall establish and maintain a Performance Guarantee for the benefit of EPA in the amount of $2,965,000 (hereinafter "Estimated Cost of the Work") in one or more of the following forms, which must be satisfactory in form and substance to EPA:

a.   A surety bond unconditionally guaranteeing payment and/or performance of the Work that is issued by a surety company among those listed as acceptable sureties on Federal bonds as set forth in Circular 570 of the U.S. Department of the Treasury;

b.   One or more irrevocable letters of credit, payable to or at the direction of EPA, that is issued by one or more financial institution(s) (i) that has the authority to issue letters of credit and (ii) whose letter-of-credit operations are regulated and examined by a U.S. Federal or State agency;

c.   A trust fund established for the benefit of EPA that is administered by a trustee (i) that has the authority to act as a trustee and (ii) whose trust operations are regulated and examined by a U.S. Federal or State agency;

d.   A policy of insurance that (i) provides EPA with acceptable rights as a beneficiary thereof; and (ii) is issued by an insurance carrier (a) that has the authority to issue insurance

policies in the applicable jurisdiction(s) and (b) whose insurance operations are regulated and examined by a State agency;

e. A demonstration by Settling Defendant that it meets the financial test criteria of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work, provided that all other requirements of 40 C.F.R. § 264.143(f) are satisfied; or

f. A written guarantee to fund or perform the Work executed in favor of EPA by one or more of the following: (i) a direct or indirect parent company of Settling Defendant, or (ii) a company that has a "substantial business relationship" (as defined in 40 C.F.R. § 264.141(h)) with Settling Defendant; provided, however, that any company providing such a guarantee must demonstrate to the satisfaction of EPA that it satisfies the financial test requirements of 40 C.F.R. § 264.143(f) with respect to the Estimated Cost of the Work that it proposes to guarantee hereunder.

38.2.   Settling Defendant has selected, and EPA has approved, as an initial Performance Guarantee a surety bond pursuant to Paragraph 38.1(a), in the form attached hereto as Exhibit 1. Within 10 days after entry of this Consent Decree, Settling Defendant shall execute or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee legally binding in a form substantially identical to the documents attached hereto as Exhibit 1, and such Performance Guarantee shall thereupon be fully effective.  Within 30 days of entry of this Consent Decree, Settling Defendant shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee legally binding to the EPA Regional Financial Management Officer in accordance with Section XXV ("Notices and Submissions") of this Consent Decree and to the United States and EPA as specified in Section XXV.

39.   If at any time during the effective period of this Consent Decree, the Settling Defendant provides a Performance Guarantee for completion of the Work by means of a demonstration or guarantee pursuant to Paragraph 38.1(e) or Paragraph 38.1(f) above, such Settling Defendant shall also comply with the other relevant requirements of 40 C.F.R. § 264.143(f), 40 C.F.R. § 264.151(f), and 40 C.F.R. § 264.151(h)(1) relating to these methods unless otherwise provided in this Consent Decree, including but not limited to (i) the initial submission of required financial reports and statements from the relevant entity's chief financial officer and independent certified public accountant; (ii) the annual re-submission of such reports and statements within 90 days after the close of each such entity's fiscal year; and (iii) the notification of EPA within 90 days after the close of any fiscal year in which such entity no longer satisfies the financial test requirements set forth at 40 C.F.R. § 264.143(f)(1).  For purposes of the Performance Guarantee methods specified in this Section XII, references in 40 C.F.R. Part 264, Subpart H, to "closure," "post-closure," and "plugging and abandonment" shall be deemed to refer to the Work required under this Consent Decree, and the terms "current closure cost estimate" "current post-closure cost estimate," and "current plugging and abandonment cost estimate" shall be deemed to refer to the Estimated Cost of the Work.

40.   In the event that EPA determines at any time that a Performance Guarantee provided by Settling Defendant pursuant to this Section is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, or in the event that any Settling Defendant becomes aware of information indicating that a Performance Guarantee provided pursuant to this Section

is inadequate or otherwise no longer satisfies the requirements set forth in this Section, whether due to an increase in the estimated cost of completing the Work or for any other reason, Settling Defendant, within 30 days of receipt of notice of EPA's determination or, as the case may be, within 30 days of Settling Defendant becoming aware of such information, shall obtain and present to EPA for approval a proposal for a revised or alternative form of Performance Guarantee listed in Paragraph 38.1 of this Consent Decree that satisfies all requirements set forth in this Section. In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 42(b)(ii) of this Consent Decree. Settling Defendant's inability to post a Performance Guarantee for completion of the Work shall in no way excuse performance of any other requirements of this Consent Decree, including, without limitation, the obligation of Settling Defendant to complete the Work in strict accordance with the terms hereof.

41. The commencement of any Work Takeover pursuant to Paragraph 76 of this Consent Decree shall trigger EPA's right to receive the benefit of any Performance Guarantee provided pursuant to Paragraph 38.1(a), (b), (c), (d), or (f), and at such time EPA shall have immediate access to resources guaranteed under any such Performance Guarantee, whether in cash or in kind, as needed to continue and complete the Work assumed by EPA under the Work Takeover. If for any reason EPA is unable to promptly secure the resources guaranteed under any such Performance Guarantee, whether in cash or in kind, necessary to continue and complete the Work assumed by EPA under the Work Takeover, or in the event that the Performance Guarantee involves a demonstration of satisfaction of the financial test criteria pursuant to Paragraph 38.1(e), Settling Defendant shall immediately upon written demand from EPA deposit into an account specified by EPA, in immediately available funds and without setoff, counterclaim, or condition of any kind, a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed as of such date, as determined by EPA.

42. <u>Modification of Amount and/or Form of Performance Guarantee</u>.

    a. <u>Reduction of Amount of Performance Guarantee</u>. If Settling Defendant believes that the estimated cost to complete the remaining Work has diminished below the amount set forth in Paragraph 38.1 above, Settling Defendant may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a reduction in the amount of the Performance Guarantee provided pursuant to this Section so that the amount of the Performance Guarantee is equal to the estimated cost of the remaining Work to be performed. Settling Defendant shall submit a written proposal for such reduction to EPA that shall specify, at a minimum, the cost of the remaining Work to be performed and the basis upon which such cost was calculated. In seeking approval for a revised or alternative form of Performance Guarantee, Settling Defendant shall follow the procedures set forth in Paragraph 42(b)(ii) of this Consent Decree. If EPA decides to accept such a proposal, EPA shall notify the petitioning Settling Defendant of such decision in writing. After receiving EPA's written acceptance, Settling Defendant may reduce the amount of the Performance Guarantee in accordance with and to the extent permitted by such written acceptance. In the event of a dispute, Settling Defendant may reduce the amount of the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute. No change to the form or terms of any Performance Guarantee provided under this Section, other than a reduction in amount, is authorized except as provided in Paragraphs 40 or 42(b) of this Consent Decree.

b. <u>Change of Form of Performance Guarantee</u>.

(i)   If, after entry of this Consent Decree, Settling Defendant desires to change the form or terms of any Performance Guarantee provided pursuant to this Section, Settling Defendant may, on any anniversary date of entry of this Consent Decree, or at any other time agreed to by the Parties, petition EPA in writing to request a change in the form of the Performance Guarantee provided hereunder.  The submission of such proposed revised or alternative form of Performance Guarantee shall be as provided in Paragraph 42(b)(ii) of this Consent Decree.  Any decision made by EPA on a petition submitted under this subparagraph (b)(i) shall be made in EPA's sole and unreviewable discretion, and such decision shall not be subject to challenge by Settling Defendant pursuant to the dispute resolution provisions of this Consent Decree or in any other forum.

(ii)   Settling Defendant shall submit a written proposal for a revised or alternative form of Performance Guarantee to EPA which shall specify, at a minimum, the estimated cost of the remaining Work to be performed, the basis upon which such cost was calculated, and the proposed revised form of Performance Guarantee, including all proposed instruments or other documents required in order to make the proposed Performance Guarantee legally binding.  The proposed revised or alternative form of Performance Guarantee must satisfy all requirements set forth or incorporated by reference in this Section.  Settling Defendant shall submit such proposed revised or alternative form of Performance Guarantee to the EPA Regional Financial Management Officer in accordance with Section XXV ("Notices and Submissions") of this Consent Decree.  EPA shall notify Settling Defendant in writing of its decision to accept or reject a revised or alternative Performance Guarantee submitted pursuant to this subparagraph. Within 10 days after receiving a written decision approving the proposed revised or alternative Performance Guarantee, Settling Defendant shall execute and/or otherwise finalize all instruments or other documents required in order to make the selected Performance Guarantee legally binding in a form substantially identical to the documents submitted to EPA as part of the proposal, and such Performance Guarantee shall thereupon be fully effective.  Settling Defendant shall submit all executed and/or otherwise finalized instruments or other documents required in order to make the selected Performance Guarantee legally binding to the EPA Regional Financial Management Officer within 30 days of receiving a written decision approving the proposed revised or alternative Performance Guarantee in accordance with Section XXV ("Notices and Submissions") of this Consent Decree and to the United States and EPA as specified in Section XXV.

c. <u>Release of Performance Guarantee</u>.  If Settling Defendant receives written notice from EPA in accordance with Paragraph 44 hereof that the Work has been fully and finally completed in accordance with the terms of this Consent Decree, or if EPA otherwise so notifies Settling Defendant in writing, Settling Defendant may thereafter release, cancel, or discontinue the Performance Guarantee provided pursuant to this Section.  Settling Defendant shall not release, cancel, or discontinue any Performance Guarantee provided pursuant to this Section except as provided in this subparagraph.  In the event of a dispute, Settling Defendant may release, cancel, or discontinue the Performance Guarantee required hereunder only in accordance with a final administrative or judicial decision resolving such dispute.

XIII. CERTIFICATION OF COMPLETION

43.     Within 30 days after a Record of Decision is issued by EPA for the Granby Subdistrict and/or the Site, Settling Defendant shall submit the Removal Action Report.  In the report, a registered professional engineer and the Settling Defendant's Project Coordinator shall state that the Removal Action has been completed in full satisfaction of the requirements of this Consent Decree.  The written report shall include as-built drawings signed and stamped by a professional engineer.  The report shall contain the following statement, signed by a responsible corporate official of the Settling Defendant or the Settling Defendant's Project Coordinator:

> To the best of my knowledge, after thorough investigation, I certify that the information contained in or accompanying this submission is true, accurate and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

If, after review of the Removal Action Report, EPA, after reasonable opportunity to review and comment by the State, determines that the Removal Action or any portion thereof has not been completed in accordance with this Consent Decree or that the Performance Standards have not been achieved, EPA will notify Settling Defendant in writing of the activities that must be undertaken by Settling Defendant pursuant to this Consent Decree to complete the Removal Action and achieve the Performance Standards provided, however, that EPA may only require Settling Defendant to perform such activities pursuant to this Paragraph to the extent that such activities are consistent with the "scope of the action selected in the Action Memo," as that term is defined in Paragraph 12.b.  EPA will set forth in the notice a schedule for performance of such activities consistent with the Consent Decree and the SOW or require the Settling Defendant to submit a schedule to EPA for approval pursuant to Section X (EPA Approval of Plans and Other Submissions).  Settling Defendant shall perform all activities described in the notice in accordance with the specifications and schedules established pursuant to this Paragraph, subject to its right to invoke the dispute resolution procedures set forth in Section XVIII (Dispute Resolution).

44.     If EPA concludes, based on the initial or any subsequent report requesting Certification of Completion and after a reasonable opportunity for review and comment by the State, that the Removal Action has been performed and the Performance Standards achieved in accordance with this Consent Decree, EPA will so certify in writing to Settling Defendant.  This certification shall constitute the Certification of Completion of the Removal Action for purposes of this Consent Decree, including, but not limited to, Section XX (Covenants Not to Sue by Plaintiff).  Certification of Completion of the Removal Action shall not affect Settling Defendant's obligations under this Consent Decree.

## XIV.  EMERGENCY RESPONSE

45.     In the event of any action or occurrence during the performance of the Work which causes or threatens a release of Waste Material from the Site that constitutes an emergency situation or may present an immediate threat to public health or welfare or the environment, Settling Defendant shall, subject to Paragraph 46, immediately take all appropriate action to prevent, abate, or minimize such release or threat of release, and shall immediately notify the EPA's Project Coordinator, or, if the Project Coordinator is unavailable, EPA's Alternate Project Coordinator.  If neither of these persons is available, the Settling Defendant shall notify the EPA Regional Duty Officer, Emergency Response and Removal Branch, U.S. Environmental

Protection Agency, Region VII, at 913-281-0991 (24-hour number). Settling Defendant shall take such actions in consultation with EPA's Project Coordinator or other available authorized EPA officer and in accordance with all applicable provisions of the Health and Safety Plans, the Contingency Plans, and any other applicable plans or documents developed pursuant to this Consent Decree and the SOW. In the event that Settling Defendant fails to take appropriate response action as required by this Section, and EPA or, as appropriate, the State takes such action instead, Settling Defendant shall reimburse EPA and the State all costs of the response action not inconsistent with the NCP pursuant to Section XV (Payments for Response Costs).

46.     Nothing in the preceding Paragraph or in this Consent Decree shall be deemed to limit any authority of the United States a) to take all appropriate action to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, or b) to direct or order such action, or seek an order from the Court, to protect human health and the environment or to prevent, abate, respond to, or minimize an actual or threatened release of Waste Material on, at, or from the Site, subject to Section XX (Covenants Not to Sue by Plaintiff).

XV.  PAYMENTS FOR RESPONSE COSTS

47.     Payments for Past Response Costs.

        a.     Within 30 days of the Effective Date, Settling Defendant shall pay to EPA $198,645.11 in payment for Past Response Costs. Payment shall be made by FedWire Electronic Funds Transfer ("EFT") to the U.S. Department of Justice account in accordance with current EFT procedures, referencing USAO File Number _____, EPA Site/Spill ID Number 07RZ-01, and DOJ Case Number 90-11-2-07088/1. Payment shall be made in accordance with instructions provided to the Settling Defendant by the Financial Litigation Unit of the United States Attorney's Office for the District of Missouri following lodging of the Consent Decree. Any payments received by the Department of Justice after 4:00 p.m. (Eastern Time) will be credited on the next business day.

        b.     At the time of payment, Settling Defendant shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXV (Notices and Submissions).

        c.     The total amount to be paid by Setting Defendant pursuant to Subparagraph 47.a shall be deposited in the Newton County Mine Tailings Superfund Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.

48.     Payments for Future Response Costs.

        a.     Settling Defendant shall pay to EPA all Future Response Costs not inconsistent with the National Contingency Plan. On an annual basis the United States will send Settling Defendant a bill requiring payment that includes EPA's Itemized Cost Summary ("ICS"). Where a cost on the ICS is contested as permitted herein, the Settling Defendant may request cost documentation. Settling Defendant shall make all payments within 45 days of Settling Defendant's receipt of each bill requiring payment, except as otherwise provided in

Paragraph 49.  The total amount to be paid by Setting Defendant shall be deposited in the Newton County Mine Tailings Superfund Site Special Account within the EPA Hazardous Substance Superfund to be retained and used to conduct or finance response actions at or in connection with the Site, or to be transferred by EPA to the EPA Hazardous Substance Superfund.  Settling Defendant shall make all payments required by this Paragraph by a certified or cashier's check made payable to "Newton County Mine Tailings Superfund Site Special Account," referencing the name and address of the party making the payment, EPA Site/Spill ID Number 07RZ-01, and DOJ Case Number 90-11-2-07088/1.  Settling Defendant shall send the check to:

> Mellon Bank, EPA Region VII Superfund
>
> FNMG Branch
>
> P. O. Box 371099M
>
> Pittsburgh, Pennsylvania 15251

b.     At the time of payment, Settling Defendant shall send notice that payment has been made to the United States, to EPA and to the Regional Financial Management Officer, in accordance with Section XXV (Notices and Submissions).

49.        Settling Defendant may contest payment of any Future Response Costs under Paragraph 48 if it determines that the United States has made an accounting error, if it alleges that a cost item that is included represents costs that are inconsistent with the NCP, or if the cost item is not a cost associated with the Work at the Granby Subdistrict of the Site. Such objection shall be made in writing within 45 days of receipt of the bill and must be sent to the United States pursuant to Section XXV (Notices and Submissions).  Any such objection shall specifically identify the contested Future Response Costs and the basis for objection.  In the event of an objection, the Settling Defendant shall within the 45 day period pay all uncontested Future Response Costs to the United States in the manner described in Paragraph 47.  Simultaneously, the Settling Defendant shall establish an interest-bearing escrow account in a federally-insured bank and remit to that escrow account funds equivalent to the amount of the contested Future Response Costs.  The Settling Defendant shall send to the United States, as provided in Section XXV (Notices and Submissions), a copy of the transmittal letter and check paying the uncontested Future Response Costs, and a copy of the correspondence that establishes and funds the escrow account, including, but not limited to, information containing the identity of the bank and bank account under which the escrow account is established as well as a bank statement showing the initial balance of the escrow account.  Simultaneously with establishment of the escrow account, the Settling Defendant shall initiate the Dispute Resolution procedures in Section XVIII (Dispute Resolution).  If the United States prevails in the dispute, within 5 days of the resolution of the dispute, the Settling Defendant shall pay the sums due (with accrued interest) to the United States by EFT in the manner described in Paragraph 47.  If the Settling Defendant prevails concerning any aspect of the contested costs, the Settling Defendant shall pay that portion of the costs (plus associated accrued interest) for which they did not prevail to the United States in the manner described in Paragraph 47; Settling Defendant shall be disbursed any balance of the escrow account.  The dispute resolution procedures set forth in this Paragraph in

conjunction with the procedures set forth in Section XVIII (Dispute Resolution) shall be the exclusive mechanisms for resolving disputes regarding the Settling Defendant's obligation to reimburse the United States for its Future Response Costs.

50.     In the event that the payments required by Paragraph 48 are not made within 45 days of the Settling Defendant's receipt of the bill, Settling Defendant shall pay Interest on the unpaid balance.  The Interest on Future Response Costs shall begin to accrue on the date of the bill.  The Interest shall accrue through the date of the Settling Defendant's payment. Payments of Interest made under this Paragraph shall be in addition to such other remedies or sanctions available to Plaintiff by virtue of Settling Defendant's failure to make timely payments under this Section including, but not limited to, payment of stipulated penalties pursuant to Paragraph 64.  The Settling Defendant shall make all payments required by this Paragraph in the manner described in Paragraph 48.

## XVI.  Indemnification and Insurance

51.     Settling Defendant's Indemnification of the United States.

        a.     The United States does not assume any liability by entering into this agreement or by virtue of any designation of Settling Defendant as EPA's authorized representatives under Section 104(e) of CERCLA.  Settling Defendant shall indemnify, save and hold harmless the United States and its officials, agents, employees, contractors, subcontractors, or representatives for or from any and all claims or causes of action arising from, or on account of, negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree, including, but not limited to, any claims arising from any designation of Settling Defendant as EPA's authorized representatives under Section 104(e) of CERCLA.  Further, the Settling Defendant agrees to pay the United States all costs it incurs including, but not limited to, attorneys fees and other expenses of litigation and settlement arising from, or on account of, claims made against the United States based on negligent or other wrongful acts or omissions of Settling Defendant, its officers, directors, employees, agents, contractors, subcontractors, and any persons acting on its behalf or under its control, in carrying out activities pursuant to this Consent Decree.  The United States shall not be held out as a party to any contract entered into by or on behalf of Settling Defendant in carrying out activities pursuant to this Consent Decree.  Neither the Settling Defendant nor any such contractor shall be considered an agent of the United States.

        b.     The United States shall give Settling Defendant notice of any claim for which the United States plans to seek indemnification pursuant to Paragraph 51, and shall consult with Settling Defendant prior to settling such claim.

52.     Settling Defendant waives all claims against the United States for damages or reimbursement or for set-off of any payments made or to be made to the United States arising from or on account of any contract, agreement, or arrangement between the Settling Defendant and any person for performance of Work on or relating to the Site, including, but not limited to, claims on account of construction delays.  In addition, Settling Defendant shall indemnify and hold harmless the United States with respect to any and all claims for damages or reimbursement arising from or on account of any contract, agreement, or arrangement between

the Settling Defendant and any person for performance of Work on or relating to the Granby Subdistrict of the Site, including, but not limited to, claims on account of construction delays.

a.     No later than 15 days before commencing any on-site Work, Settling Defendant shall secure, and shall maintain until the first anniversary of EPA's Certification of Completion of the Removal Action pursuant to Section XIII (Certification of Completion) comprehensive general liability insurance with limits of three million dollars, combined single limit, and automobile liability insurance with limits of three million dollars, combined single limit, naming the United States and the States as additional insureds. In addition, for the duration of this Consent Decree, Settling Defendant shall satisfy, or shall ensure that its contractors or subcontractors satisfy, all applicable laws and regulations regarding the provision of worker's compensation insurance for all persons performing the Work on behalf of Settling Defendant in furtherance of this Consent Decree. Prior to commencement of the Work under this Consent Decree, Settling Defendant shall provide to EPA certificates of such insurance and a copy of each insurance policy. Settling Defendant shall resubmit such certificates and copies of policies each year on the anniversary of the Effective Date. If Settling Defendant demonstrates by evidence satisfactory to EPA that any contractor or subcontractor maintains insurance equivalent to that described above, or insurance covering the same risks but in a lesser amount, then, with respect to that contractor or subcontractor, Settling Defendant need provide only that portion of the insurance described above which is not maintained by the contractor or subcontractor.

## XVII. FORCE MAJEURE

53.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of the Settling Defendant, of any entity controlled by Settling Defendant, or of Settling Defendant's contractors, that delays or prevents the performance of any obligation under this Consent Decree despite Settling Defendant's best efforts to fulfill the obligation. The requirement that the Settling Defendant exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (1) as it is occurring and (2) following the potential force majeure event, such that the delay is minimized to the greatest extent possible. "Force Majeure" does not include financial inability to complete the Work or a failure to attain the Performance Standards.

54.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, the Settling Defendant shall notify orally EPA's Project Coordinator or, in his or her absence, EPA's Alternate Project Coordinator or, in the event both of EPA's designated representatives are unavailable, the Chief of the Federal Facilities/Special Emphasis Branch of the Superfund Division, EPA Region VII, within forty-eight (48) hours of when Settling Defendant first knew that the event might cause a delay. Within seven (7) days thereafter, Settling Defendant shall provide in writing to EPA an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; the Settling Defendant's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of the Settling Defendant, such event may cause or contribute to an endangerment to

23

public health, welfare or the environment. The Settling Defendant shall include with any notice all available documentation supporting its claim that the delay was attributable to a force majeure event. Failure to comply with the above requirements may, in the United States' sole and unreviewable discretion, preclude Settling Defendant from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. Settling Defendant shall be deemed to know of any circumstance of which Settling Defendant, any entity controlled by Settling Defendant, or Settling Defendant's contractors knew or should have known.

55.     If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by EPA, after a reasonable opportunity for review and comment by the State, for such time as is necessary to complete those obligations. An extension of the time for performance of the obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation. If EPA, after a reasonable opportunity for review and comment by the State, does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, EPA will notify the Settling Defendant in writing of its decision. If EPA, after a reasonable opportunity for review and comment by the State, agrees that the delay is attributable to a force majeure event, EPA will notify the Settling Defendant in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

56.     If the Settling Defendant elects to invoke the dispute resolution procedures set forth in Section XVIII (Dispute Resolution), they shall do so no later than 15 days after receipt of EPA's notice. In any such proceeding, Settling Defendant shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that Settling Defendant complied with the requirements of Paragraphs 54 and 55, above. If Settling Defendant carries this burden, the delay at issue shall be deemed not to be a violation by Settling Defendant of the affected obligation of this Consent Decree identified to EPA and the Court.

XVIII. Dispute Resolution

57.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Consent Decree. However, the procedures set forth in this Section shall not apply to actions by the United States to enforce obligations of the Settling Defendant that have not been disputed in accordance with this Section.

58.     Any dispute which arises under or with respect to this Consent Decree shall in the first instance be the subject of informal negotiations between the parties to the dispute. The period for informal negotiations shall not exceed 20 days from the time the dispute arises, unless it is modified by written agreement of the parties to the dispute. The dispute shall be considered to have arisen when one party sends the other party a written Notice of Dispute.

59.	Statements of Position.

	a.	In the event that the parties cannot resolve a dispute by informal negotiations under the preceding Paragraph, then the position advanced by EPA shall be considered binding unless, within seven (7) days after the conclusion of the informal negotiation period, Settling Defendant invokes the formal dispute resolution procedures of this Section by serving on the United States a written Statement of Position on the matter in dispute, including, but not limited to, any factual data, analysis or opinion supporting that position and any supporting documentation relied upon by the Settling Defendant. The Statement of Position shall specify the Settling Defendant's position as to whether formal dispute resolution should proceed under Paragraph 60 or Paragraph 61.

	b.	Within seven (7) days after receipt of Settling Defendant's Statement of Position, EPA will serve on Settling Defendant its Statement of Position, including, but not limited to, any factual data, analysis, or opinion supporting that position and all supporting documentation relied upon by EPA. EPA's Statement of Position shall include a statement as to whether formal dispute resolution should proceed under Paragraph 60 or 61. Within seven (7) days after receipt of EPA's Statement of Position, Settling Defendant may submit a Reply.

	c.	If there is disagreement between EPA and the Settling Defendant as to whether dispute resolution should proceed under Paragraph 60 or 61, the parties to the dispute shall follow the procedures set forth in the paragraph determined by EPA to be applicable. However, if the Settling Defendant ultimately appeals to the Court to resolve the dispute, the Court shall determine which paragraph is applicable in accordance with the standards of applicability set forth in Paragraphs 60 and 61.

60.	Formal dispute resolution for disputes pertaining to the selection or adequacy of any response action and all other disputes that are accorded review on the administrative record under applicable principles of administrative law shall be conducted pursuant to the procedures set forth in this Paragraph. For purposes of this Paragraph, the adequacy of any response action includes, without limitation: (1) the adequacy or appropriateness of plans, procedures to implement plans, or any other items requiring approval by EPA under this Consent Decree; and (2) the adequacy of the performance of response actions taken pursuant to this Consent Decree. Nothing in this Consent Decree shall be construed to allow any dispute by Settling Defendant regarding the validity of the Action Memo's provisions.

	a.	An administrative record of the dispute shall be maintained by EPA and shall contain all statements of position, including supporting documentation, submitted pursuant to this Section. Where appropriate, EPA may allow submission of supplemental statements of position by the parties to the dispute.

	b.	The Regional Hearing Officer, EPA Region VII, will issue a final administrative decision resolving the dispute based on the administrative record described in Paragraph 60.a. This decision shall be binding upon the Settling Defendant, subject only to the right to seek judicial review pursuant to Paragraph 60.c and d.

	c.	Any administrative decision made by EPA pursuant to Paragraph 60.b. shall be reviewable by this Court, provided that a motion for judicial review of the decision is filed by the Settling Defendant with the Court and served on all Parties within 10 days of receipt of EPA's decision. The motion shall include a description of the matter in dispute, the efforts

made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of this Consent Decree. The United States may file a response to Settling Defendant's motion.

d.     In proceedings on any dispute governed by this Paragraph, Settling Defendant shall have the burden of demonstrating that the decision of the Regional Hearing Officer is arbitrary and capricious or otherwise not in accordance with law. Judicial review of EPA's decision shall be on the administrative record compiled pursuant to Paragraph 60.a.

61.     Formal dispute resolution for disputes that neither pertain to the selection or adequacy of any response action nor are otherwise accorded review on the administrative record under applicable principles of administrative law, shall be governed by this Paragraph.

a.     Following receipt of Settling Defendant's and EPA's Statement of Position submitted pursuant to Paragraph 59, the Regional Hearing Officer, EPA Region VII, will issue a final decision resolving the dispute. The Regional Hearing Officer's decision shall be binding on the Settling Defendant unless, within 10 days of receipt of the decision, the Settling Defendant files with the Court and serves on the United States a motion for judicial review of the decision setting forth the matter in dispute, the efforts made by the parties to resolve it, the relief requested, and the schedule, if any, within which the dispute must be resolved to ensure orderly implementation of the Consent Decree. The United States may file a response to Settling Defendant's motion.

b.     Judicial review of any dispute governed by this Paragraph shall be governed by applicable principles of law.

62.     The invocation of formal dispute resolution procedures under this Section shall not extend, postpone or affect in any way any obligation of the Settling Defendant under this Consent Decree, not directly in dispute, unless EPA or the Court agrees otherwise. Stipulated penalties with respect to the disputed matter shall continue to accrue but payment shall be stayed pending resolution of the dispute as provided in Paragraph 70. Notwithstanding the stay of payment, stipulated penalties shall accrue from the first day of noncompliance with any applicable provision of this Consent Decree. In the event that the Settling Defendant does not prevail on the disputed issue, stipulated penalties shall be assessed and paid as provided in Section XIX (Stipulated Penalties). Nothing herein prevents EPA from implementing its enforcement discretion in determining to seek stipulated penalties.

XIX.  Stipulated Penalties

63.     Settling Defendant shall be liable for stipulated penalties in the amounts set forth in Paragraphs 64 and 65 to the United States for failure to comply with the requirements of this Consent Decree specified below, unless excused under Section XVII (Force Majeure). "Compliance" by Settling Defendant shall include completion of the activities under this Consent Decree or any work plan or other plan approved under this Consent Decree identified below in accordance with all applicable requirements of law, this Consent Decree, the SOW, and any plans or other documents approved by EPA pursuant to this Consent Decree and within the specified time schedules established by and approved under this Consent Decree.

64.     Stipulated Penalty Amounts - Work.

a.    The following stipulated penalties shall accrue per violation per day for any noncompliance identified in Subparagraph 64.b:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 1,000 | 1st through 14th day |
| $ 2,000 | 15th through 30th day |
| $ 3,000 | 31st day and beyond |

b.    Compliance Milestones.

(1).  Submission of Removal Action Work Plan

(2).  Failure to initiate Removal Action

(3).  Failure to meet schedules established by approved work plans

65.    Stipulated Penalty Amounts - Other deliverables or violations.

a.    The following stipulated penalties shall accrue per violation per day for any violation of this Consent Decree, the SOW, approved work plans other than those identified in Paragraph 64:

| Penalty Per Violation Per Day | Period of Noncompliance |
|---|---|
| $ 500 | 1st through 14th day |
| $ 1,000 | 15th through 30th day |
| $ 2,000 | 31st day and beyond |

66.    All penalties shall begin to accrue on the day after the complete performance is due or the day a violation occurs, and shall continue to accrue through the final day of the correction of the noncompliance or completion of the activity.  However, stipulated penalties shall not accrue:  (1) with respect to a deficient submission under Section X (EPA Approval of Plans and Other Submissions), during the period, if any, beginning on the 31st day after EPA's receipt of such submission until the date that EPA notifies Settling Defendant of any deficiency; (2) with respect to a decision by the Regional Hearing Officer, EPA Region VII, under Paragraph 60.b or 61.a of Section XVIII (Dispute Resolution), during the period, if any, beginning on the 21st day after the date that Settling Defendant's reply to EPA's Statement of Position is received until the date that the Director issues a final decision regarding such dispute; or (3) with respect to judicial review by this Court of any dispute under Section XVIII (Dispute Resolution), during the period, if any, beginning on the 31st day after the Court's receipt of the final submission regarding the dispute until the date that the Court issues a final decision regarding such dispute.  Nothing herein shall prevent the simultaneous accrual of separate penalties for separate violations of this Consent Decree.

67.    Following EPA's determination that Settling Defendant has failed to comply with a requirement of this Consent Decree,  EPA may give Settling Defendant written notification of the same and describe the noncompliance.  EPA may send the Settling Defendant a written demand for the payment of the penalties.  However, penalties shall accrue as provided

in the preceding Paragraph regardless of whether EPA has notified the Settling Defendant of a violation.

68.     All penalties accruing under this Section shall be due and payable to the United States within 30 days of the Settling Defendant's receipt from EPA of a demand for payment of the penalties, unless Settling Defendant invokes the Dispute Resolution procedures under Section XVIII (Dispute Resolution). All payments to the United States under this Section shall be paid by certified or cashier's check made payable to "EPA Hazardous Substances Superfund," shall be mailed to Mellon Bank, EPA Region VII Superfund, FNMG Branch, P. O. Box 371099M, Pittsburgh, Pennsylvania 15251, shall indicate that the payment is for stipulated penalties, and shall reference the EPA Region and Site/Spill ID #07RZ-01, the DOJ Case Number 90-11-2-07088/1, and the name and address of the party making payment. Copies of the check or checks paid pursuant to this Section, and any accompanying transmittal letter, shall be sent to the United States as provided in Section XXV (Notices and Submissions).

69.     The payment of penalties shall not alter in any way Settling Defendant's obligation to complete the performance of the Work required under this Consent Decree.

70.     Penalties shall continue to accrue as provided in Paragraph 66 during any dispute resolution period, but need not be paid until the following:

     a.     If the dispute is resolved by agreement or by a decision of EPA that is not appealed to this Court, accrued penalties determined to be owing shall be paid to EPA within 15 days of the agreement or the receipt of EPA's decision or order;

     b.     If the dispute is appealed to this Court and the United States prevails in whole or in part, Settling Defendant shall pay all accrued penalties determined by the Court to be owed to EPA within 60 days of receipt of the Court's decision or order, except as provided in Subparagraph c below;

     c.     If the District Court's decision is appealed by any Party, Settling Defendant shall pay all accrued penalties determined by the District Court to be owing to the United States into an interest-bearing escrow account within 60 days of receipt of the Court's decision or order. Penalties shall be paid into this account as they continue to accrue, at least every 60 days. Within 15 days of receipt of the final appellate court decision, the escrow agent shall pay the balance of the account to EPA or to Settling Defendant to the extent that each prevails.

71.     If Settling Defendant fails to pay stipulated penalties when due, the United States may institute proceedings to collect the penalties, as well as interest. Settling Defendant shall pay Interest on the unpaid balance, which shall begin to accrue on the date of demand made pursuant to Paragraph 68.

72.     Nothing in this Consent Decree shall be construed as prohibiting, altering, or in any way limiting the ability of the United States to seek any other remedies or sanctions available by virtue of Settling Defendant's violation of this Consent Decree or of the statutes and regulations upon which it is based, including, but not limited to, penalties pursuant to Section 122(l) of CERCLA, provided, however, that the United States shall not seek civil penalties pursuant to Section 122(l) of CERCLA for any violation for which a stipulated penalty is provided herein, except in the case of a willful violation of the Consent Decree.

73. Notwithstanding any other provision of this Section, the United States may, in its unreviewable discretion, waive any portion of stipulated penalties that have accrued pursuant to this Consent Decree.

## XX. Covenants Not to Sue by Plaintiff

74. In consideration of the actions that will be performed and the payments that will be made by the Settling Defendant under the terms of the Consent Decree, and except as specifically provided in Paragraph 75 of this Section, the United States covenants not to sue or to take administrative action against Settling Defendant pursuant to Sections 106 and 107(a) of CERCLA for performance of the Work and for recovery of Past Response Costs and Future Response Costs. These covenants not to sue or to take administrative action shall take effect upon receipt by EPA of the Payments required by Paragraph 47.a of Section XV (Payments for Response Costs). These covenants not to sue or to take administrative action are conditioned upon the satisfactory performance by Settling Defendant of its obligations under this Consent Decree. These covenants not to sue or to take administrative action extend only to the Settling Defendant and do not extend to any other person.

75. General reservations of rights. The United States reserves, and this Consent Decree is without prejudice to, all rights against Settling Defendant with respect to all matters not expressly included within Plaintiff's covenant not to sue. Notwithstanding any other provision of this Consent Decree, the United States reserves all rights against Settling Defendant with respect to:

a. claims based on a failure by Settling Defendant to meet a requirement of this Consent Decree;

b. liability arising from the past, present, or future disposal, release, or threat of release of Waste Material outside of the Site;

c. liability based upon the Settling Defendant's ownership or operation of the Site, or upon the Settling Defendant's transportation, treatment, storage, or disposal, or the arrangement for the transportation, treatment, storage, or disposal of Waste Material at or in connection with the Site, other than as provided in the Action Memo, the Work, or otherwise ordered by EPA, after signature of this Consent Decree by the Settling Defendant;

d. liability for damages for injury to, destruction of, or loss of natural resources, and for the costs of any natural resource damage assessments;

e. criminal liability;

f. liability for violations of federal or state law which occur during or after implementation of the Removal Action; and

g. liability, prior to Certification of Completion of the Removal Action, for additional response actions that EPA determines are necessary to achieve Performance Standards, but that cannot be required pursuant to Paragraph 12 (Modification of the SOW or Related Work Plans); and

h. liability for additional Subdistricts at the Site or the final remedial action for the Granby Subdistrict.

76._____Work Takeover.

a.    In the event EPA determines that Settling Defendant has (i) ceased implementation of any portion of the Work, or (ii) is seriously or repeatedly deficient or late in their performance of the Work, or (iii) is implementing the Work in a manner which may cause an endangerment to human health or the environment, EPA may issue a written notice ("Work Takeover Notice") to the Settling Defendant.  Any Work Takeover Notice issued by EPA will specify the grounds upon which such notice was issued and will provide Settling Defendant a period of 10 days within which to remedy the circumstances giving rise to EPA's issuance of such notice.

b.    If, after expiration of the 10-day notice period specified in Paragraph 76.a, Settling Defendant has not remedied to EPA's satisfaction the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice, EPA may at any time thereafter assume the performance of all or any portions of the Work as EPA deems necessary ("Work Takeover"). EPA shall notify Settling Defendant in writing (which writing may be electronic) if EPA determines that implementation of a Work Takeover is warranted under this Paragraph 76.b.

c.    Settling Defendant may invoke the procedures set forth in Section XVIII (Dispute Resolution), Paragraph 60, to dispute EPA's implementation of a Work Takeover under Paragraph 76.b.  However, notwithstanding Settling Defendant's invocation of such dispute resolution procedures, and during the pendency of any such dispute, EPA may in its sole discretion commence and continue a Work Takeover under Paragraph 76.b until the earlier of (i) the date that Settling Defendant remedies, to EPA's satisfaction, the circumstances giving rise to EPA's issuance of the relevant Work Takeover Notice or (ii) the date that a final decision is rendered in accordance with Section XVIII (Dispute Resolution), Paragraph 60, requiring EPA to terminate such Work Takeover.

d.    After commencement and for the duration of any Work Takeover, EPA shall have immediate access to and benefit of any performance guarantee provided pursuant to Section XII of this Consent Decree, in accordance with the provisions of Paragraph 41 of that Section.  If and to the extent that EPA is unable to secure the resources guaranteed under any such performance guarantee and the Settling Defendant fails to remit a cash amount up to but not exceeding the estimated cost of the remaining Work to be performed, all in accordance with the provisions of Paragraph 41, any unreimbursed costs incurred by EPA in performing Work under the Work Takeover shall be considered Future Response Costs that Settling Defendant shall pay pursuant to Section XV (Payment for Response Costs).

77.    Notwithstanding any other provision of this Consent Decree, the United States retains all authority and reserves all rights to take any and all response actions authorized by law.

## XXI.  Covenants by Settling Defendant

78.    Covenant Not to Sue.  Subject to the reservations in Paragraph 80, Settling Defendant hereby covenants not to sue and agrees not to assert any claims or causes of action against the United States with respect to the Work, past response actions, Past Response Costs and Future Response Costs as defined herein, or this Consent Decree, including, but not limited to:

a. any direct or indirect claim for reimbursement from the Hazardous Substance Superfund (established pursuant to the Internal Revenue Code, 26 U.S.C. § 9507) through CERCLA Sections 106(b)(2), 107, 111, 112, 113 or any other provision of law;

b. any claims against the United States, including any department, agency or instrumentality of the United States under CERCLA Sections 107 or 113 related to the Site, or

c. any claims arising out of response actions at or in connection with the Site, including any claim under the United States Constitution, the Tucker Act, 28 U.S.C. § 1491, the Equal Access to Justice Act, 28 U.S.C. § 2412, as amended, or at common law.

79. Except as provided in Paragraph 82 (Waiver of Claims Against De Micromis Parties), Paragraph 83 (Waiver of Claims Against *De Minimis* Parties), and Paragraph 87 (waiver of Claim-Splitting Defenses), these covenants not to sue shall not apply in the event that the United States brings a cause of action or issues an order pursuant to the reservations set forth in Paragraphs 75 (b) - (d), but only to the extent that Settling Defendant's claims arise from the same response action, response costs, or damages that the United States is seeking pursuant to the applicable reservation.

80. The Settling Defendant reserves, and this Consent Decree is without prejudice to, claims against the United States, subject to the provisions of Chapter 171 of Title 28 of the United States Code, for money damages for injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission of any employee of the United States while acting within the scope of his office or employment under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred. However, any such claim shall not include a claim for any damages caused, in whole or in part, by the act or omission of any person, including any contractor, who is not a federal employee as that term is defined in 28 U.S.C. § 2671; nor shall any such claim include a claim based on EPA's selection of response actions, or the oversight or approval of the Settling Defendant's plans or activities. The foregoing applies only to claims which are brought pursuant to any statute other than CERCLA and for which the waiver of sovereign immunity is found in a statute other than CERCLA.

81. Nothing in this Consent Decree shall be deemed to constitute preauthorization of a claim within the meaning of Section 111 of CERCLA, 42 U.S.C. § 9611, or 40 C.F.R. § 300.700(d).

82. Settling Defendant agrees not to assert any claims and to waive all claims or causes of action that they may have for all matters relating to the Granby Subdistrict of the Site, including for contribution, against any person where the person's liability to Settling Defendant with respect to the Granby Subdistrict of the Site is based solely on having arranged for disposal or treatment, or for transport for disposal or treatment, of hazardous substances at the Granby Subdistrict of the Site, or having accepted for transport for disposal or treatment of hazardous substances at the Granby Subdistrict of the Site, if:

a. the materials contributed by such person to the Granby Subdistrict of the Site containing hazardous substances did not exceed the greater of (i) 0.002% of the total volume of waste at the Site, or (ii) 110 gallons of liquid materials or 200 pounds of solid materials.

b.    This waiver shall not apply to any claim or cause of action against any person meeting the above criteria if EPA has determined that the materials contributed to the Granby Subdistrict of the Site by such person contributed or could contribute significantly to the costs of response at the Granby Subdistrict of the Site. This waiver also shall not apply with respect to any defense, claim, or cause of action that Settling Defendant may have against any person if such person asserts a claim or cause of action relating to the Granby Subdistrict of the Site against the Settling Defendant.

## XXII. EFFECT OF SETTLEMENT; CONTRIBUTION PROTECTION

83.       Except as provided in Paragraph 82 (Waiver of Claims Against De Micromis Parties), nothing in this Consent Decree shall be construed to create any rights in, or grant any cause of action to, any person not a Party to this Consent Decree.  The preceding sentence shall not be construed to waive or nullify any rights that any person not a signatory to this Consent Decree may have under applicable law.  Except as provided in Paragraph 82(Waiver of Claims Against De Micromis Parties), each of the Parties expressly reserves any and all rights (including, but not limited to, any right to contribution), defenses, claims, demands, and causes of action which each Party may have with respect to any matter, transaction, or occurrence relating in any way to the Site against any person not a Party hereto.

84.       The Parties agree, and by entering this Consent Decree this Court finds, that the Settling Defendant is entitled, as of the Effective Date, to protection from contribution actions or claims as provided by CERCLA Section 113(f)(2), 42 U.S.C. § 9613(f)(2) for matters addressed in this Consent Decree.  Matters addressed shall include Past Response Costs and Future Response Costs as defined herein and all Work performed under the Consent Decree.

85.       The Settling Defendant agrees that with respect to any suit or claim for contribution brought by them for matters related to this Consent Decree it will notify the United States in writing no later than 60 days prior to the initiation of such suit or claim.

86.       The Settling Defendant also agrees that with respect to any suit or claim for contribution brought against them for matters related to this Consent Decree, it will notify in writing the United States  within 10 days of service of the complaint on it.  In addition, Settling Defendant shall notify the United States within 10 days of service or receipt of any Motion for Summary Judgment and within 10 days of receipt of any order from a court setting a case for trial.

87.       In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, recovery of response costs, or other appropriate relief relating to the Site, Settling Defendant shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case; provided, however, that nothing in this Paragraph affects the enforceability of the covenants not to sue set forth in Section XX (Covenants Not to Sue by Plaintiff).

## XXIII. ACCESS TO INFORMATION

88.     Settling Defendant shall provide to EPA, upon request, copies of all documents and information within its possession or control or that of its contractors or agents relating to activities at the Granby Subdistrict of the Site or to the implementation of this Consent Decree, including, but not limited to, sampling, analysis, chain of custody records, manifests, trucking logs, receipts, reports, sample traffic routing, correspondence, or other documents or information related to the Work.  Settling Defendant shall also make available to EPA, upon request, for purposes of investigation, information gathering, or testimony, its employees, agents, or representatives with knowledge of relevant facts concerning the performance of the Work.

89.     <u>Business Confidential and Privileged Documents</u>.

a.     Settling Defendant may assert business confidentiality claims covering part or all of the documents or information submitted to Plaintiff under this Consent Decree to the extent permitted by and in accordance with Section 104(e)(7) of CERCLA, 42 U.S.C. § 9604(e)(7), and 40 C.F.R. § 2.203(b).  Documents or information determined to be confidential by EPA will be afforded the protection specified in 40 C.F.R. Part 2, Subpart B.  If no claim of confidentiality accompanies documents or information when they are submitted to EPA, or if EPA has notified Settling Defendant that the documents or information are not confidential under the standards of Section 104(e)(7) of CERCLA or 40 C.F.R. Part 2, Subpart B, the public may be given access to such documents or information without further notice to Settling Defendant.

b.     The Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law.  If the Settling Defendant asserts such a privilege in lieu of providing documents, it shall provide the Plaintiff with the following:  (1) the title of the document, record, or information; (2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the contents of the document, record, or information: and (6) the privilege asserted by Settling Defendant.  However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

90.     No claim of confidentiality shall be made with respect to any data, including, but not limited to, all sampling, analytical, monitoring, hydrogeologic, scientific, chemical, or engineering data, or any other documents or information evidencing conditions at or around the Site.

XXIV.  R<small>ETENTION OF</small> R<small>ECORDS</small>

91.     Until 10 years after the Settling Defendant's receipt of EPA's notification pursuant to Paragraph 44.b of Section XIII (Certification of Completion of the Work), Settling Defendant shall preserve and retain all non-identical copies of records and documents (including records or documents in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to its liability under CERCLA with respect to the Site, provided, however, a Settling Defendant who is potentially liable as owner or operator of the Site must retain, in addition, all documents and records that relate to the liability of any other person under CERCLA with respect to the Site.  Each Settling Defendant must also retain, and instruct its contractors and agents to preserve, for the same period of time specified above all

33

non-identical copies of the last draft or final version of any documents or records (including documents or records in electronic form) now in its possession or control or which come into its possession or control that relate in any manner to the performance of the Work, provided, however, that Settling Defendant (and its contractors and agents) must retain, in addition, copies of all data generated during the performance of the Work and not contained in the aforementioned documents required to be retained. Each of the above record retention requirements shall apply regardless of any corporate retention policy to the contrary.

92.        At the conclusion of this document retention period, Settling Defendant shall notify the United States at least 90 days prior to the destruction of any such records or documents, and, upon request by the United States, Settling Defendant shall deliver any such records or documents to EPA. The Settling Defendant may assert that certain documents, records and other information are privileged under the attorney-client privilege or any other privilege recognized by federal law. If the Settling Defendant asserts such a privilege, it shall provide the Plaintiff with the following: (1) the title of the document, record, or information;(2) the date of the document, record, or information; (3) the name and title of the author of the document, record, or information; (4) the name and title of each addressee and recipient; (5) a description of the subject of the document, record, or information; and (6) the privilege asserted by Settling Defendant. However, no documents, reports or other information created or generated pursuant to the requirements of the Consent Decree shall be withheld on the grounds that they are privileged.

93.        Settling Defendant hereby certifies that, to the best of its knowledge and belief, after thorough inquiry, it has not altered, mutilated, discarded, destroyed or otherwise disposed of any records, documents or other information (other than identical copies) relating to its potential liability regarding the Site since notification of potential liability by the United States or the State or the filing of suit against it regarding the Site and that it has fully complied with any and all EPA requests for information pursuant to Section 104(e) and 122(e) of CERCLA, 42 U.S.C. 9604(e) and 9622(e), and Section 3007 of RCRA, 42 U.S.C. 6927.

XXV.  NOTICES AND SUBMISSIONS

94.        Whenever, under the terms of this Consent Decree, written notice is required to be given or a report or other document is required to be sent by one Party to another, it shall be directed to the individuals at the addresses specified below, unless those individuals or their successors give notice of a change to the other Parties in writing. All notices and submissions shall be considered effective upon receipt, unless otherwise provided. Written notice as specified herein shall constitute complete satisfaction of any written notice requirement of the Consent Decree with respect to the United States, EPA, and the Settling Defendant, respectively.

As to the United States:              Chief, Environmental Enforcement Section
Environment and Natural Resources Division
U.S. Department of Justice
P.O. Box 7611
Washington, D.C. 20044-7611
Re: DJ # 90-11-2-07088/1

     and

Director, Superfund Division
United States Environmental Protection Agency
Region VII
901 North Fifth Street
Kansas City, Kansas 66101

As to EPA:                        Mark D. Doolan
EPA Project Coordinator
United States Environmental Protection Agency
Region VII
901 North Fifth Street
Kansas City, Kansas 66101

As to the Settling Defendant:       Gary Uphoff
Environmental Management Service, Inc.
Settling Defendant's Project Coordinator
5934 Nicklaus Drive
Fort Colllins, CO 80528

     and

 Terrance Gileo Faye
Special Counsel to Blue Tee Corp.
BABST, CALLAND, CLEMENTS & ZOMNIR P.C.
1 N. Maple Avenue
Greensburg, Pennsylvania 15601

## XXVI. Effective Date

95.        The effective date of this Consent Decree shall be the date upon which this Consent Decree is entered by the Court, except as otherwise provided herein.

## XXVII. RETENTION OF JURISDICTION

96.        This Court retains jurisdiction over both the subject matter of this Consent Decree and the Settling Defendant for the duration of the performance of the terms and provisions of this Consent Decree for the purpose of enabling any of the Parties to apply to the Court at any time for such further order, direction, and relief as may be necessary or appropriate for the

construction or modification of this Consent Decree, or to effectuate or enforce compliance with its terms, or to resolve disputes in accordance with Section XVIII (Dispute Resolution) hereof.

## XXVIII. APPENDICES

97.      The following appendices are attached to and incorporated into this Consent Decree:

"Appendix A" is the Action Memo.

"Appendix B" is the description and/or map of the Granby Subdistrict and surrounding areas.

"Appendix C" is the SOW.

## XXIX. COMMUNITY RELATIONS

98.      Settling Defendant shall propose to EPA its participation in the community relations plan to be developed by EPA.  EPA will determine the appropriate role for the Settling Defendant under the Plan.  Settling Defendant shall also cooperate with EPA in providing information regarding the Work to the public.  As requested by EPA, Settling Defendant shall participate in the preparation of such information for dissemination to the public and in public meetings which may be held or sponsored by EPA to explain activities at or relating to the Site.

## XXX. MODIFICATION

99.      Schedules specified in this Consent Decree for completion of the Work may be modified by agreement of EPA and the Settling Defendant.  All such modifications shall be made in writing.

100.      Except as provided in Paragraph 12 (Modification of the SOW or Related Work Plans), no material modifications shall be made to the SOW without written notification to and written approval of the United States, Settling Defendant, and the Court, if such modifications fundamentally alter the basic features of the selected action within the meaning of 40 C.F.R. § 300.435(c)(2)(B)(ii).  Prior to providing its approval to any modification, the United States will provide the State with a reasonable opportunity to review and comment on the proposed modification.  Modifications to the SOW that do not materially alter that document, or material modifications to the SOW that do not fundamentally alter the basic features of the selected action within the meaning of 40 C.F.R.300.435(c)(2)(B)(ii), may be made by written agreement between EPA, after providing the State with a reasonable opportunity to review and comment on the proposed modification, and the Settling Defendant.

101.      Nothing in this Decree shall be deemed to alter the Court's power to enforce, supervise or approve modifications to this Consent Decree.

## XXXI. LODGING AND OPPORTUNITY FOR PUBLIC COMMENT

102.      This Consent Decree shall be lodged with the Court for a period of not less than thirty (30) days for public notice and comment in accordance with Section 122(d)(2) of CERCLA, 42 U.S.C. § 9622(d)(2), and 28 C.F.R. § 50.7.  The United States reserves the right to withdraw or withhold its consent if the comments regarding the Consent Decree disclose facts or considerations

which indicate that the Consent Decree is inappropriate, improper, or inadequate. Settling Defendant consents to the entry of this Consent Decree without further notice.

103.     If for any reason the Court should decline to approve this Consent Decree in the form presented, this agreement is voidable at the sole discretion of any Party and the terms of the agreement may not be used as evidence in any litigation between the Parties.

## XXXII. SIGNATORIES/SERVICE

104.     The undersigned representative of Settling Defendant, and the Deputy Assistant Attorney General for the Environment and Natural Resources Division of the Department of Justice, on behalf of the United States, each certifies that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind to this document the party he or she represents.

105.     The Settling Defendant hereby agrees not to oppose entry of this Consent Decree by this Court or to challenge any provision of this Consent Decree unless the United States has notified the Settling Defendant in writing that it no longer supports entry of the Consent Decree.

106.     The Settling Defendant shall identify, on the attached signature page, the name, address and telephone number of an agent who is authorized to accept service of process by mail on its behalf with respect to all matters arising under or relating to this Consent Decree. Settling Defendant hereby agrees to accept service in that manner and to waive the formal

service requirements set forth in Rule 4 of the Federal Rules of Civil Procedure and any applicable local rules of this Court, including, but not limited to, service of a summons. The parties agree that Settling Defendant need not file an answer to the complaint in this action unless or until the court expressly declines to enter this Consent Decree.

## XXXIII. FINAL JUDGMENT

107.     This Consent Decree and its appendices constitute the final, complete, and exclusive agreement and understanding among the parties with respect to the settlement embodied in the Consent Decree. The parties acknowledge that there are no representations, agreements or understandings relating to the settlement other than those expressly contained in this Consent Decree.

108.     Upon approval and entry of this Consent Decree by the Court, this Consent Decree shall constitute a final judgment between and among the United States and the Settling Defendant. The Court finds that there is no just reason for delay and therefore enters this judgment as a final judgment under Fed. R. Civ. P. 54 and 58.

SO ORDERED THIS _12th_ DAY OF _February_ , 2007.

_/s/ DEAN WHIPPLE_

United States District Court Judge

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Blue Tee, Corp., relating to the Newton County Mine Tailings Superfund Site.

**FOR THE UNITED STATES OF AMERICA**

12/6/06
Date

___/S/ JOHN C. CRUDEN_____
John C. Cruden
Deputy Assistant Attorney General
Environment and Natural Resources Division
U.S. Department of Justice
Washington, D.C. 20530

12/11/06
Date

___/S/ ERIKA M. ZIMMERMAN_____
Erika M. Zimmerman
Environmental Enforcement Section
Environment and Natural Resources Division

U.S. Department of Justice
P.O. Box 7611
Washington, D.C.  20044-7611
Telephone: (202) 514-5270

Bradley J. Schlozman
United States Attorney


12/11/06                                           /S/ CHARLES M. THOMAS

Date                                                   Charles M. Thomas
Assistant United States Attorney
Western District of Missouri
U.S. Department of Justice
Charles Evans Whittaker Courthouse
400 East Ninth Street, Room 5510
Kansas City, Missouri 64106
Telephone: (816) 426-3130

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Blue Tee, Corp., relating to the Newton County Mine Tailings Superfund Site.


11/22/06                                         /S/ CECILIA TAPIA

Date                                          Cecilia Tapia
Director
Superfund Division
Region VII
U.S. Environmental Protection Agency
901 North Fifth Street
Kansas City, Kansas 66101


11/20/06                                         /S/  J. DANIEL BREEDLOVE

Date                                          J. Daniel Breedlove
Assistant Regional Counsel
U.S. Environmental Protection Agency
Region VII
901 North Fifth Street
Kansas City, Kansas 66101

THE UNDERSIGNED PARTY enters into this Consent Decree in the matter of United States v. Blue Tee, Corp., relating to the Newton County Mine Tailings Superfund Site.

**FOR BLUE TEE CORP.**

11/17/06                              Signature:   /S/ TERRANCE GILEO FAYE

Date                                          Terrance Gileo Faye

Special Counsel to Blue Tee Corp.

BABST, CALLAND, CLEMENTS & ZOMNIR P.C.

1 N. Maple Avenue

Greensburg, Pennsylvania 15601

Agent Authorized to Accept Service on Behalf of Above-signed Party:

Name:   /S/ TERRANCE GILEO FAYE

Terrance Gileo Faye

Special Counsel to Blue Tee Corp

BABST, CALLAND, CLEMENTS & ZOMNIR P.C.

1 N. Maple Avenue

Greensburg, Pennsylvania 15601

(724) 837-6221